IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| MONETTA HAMPTON, | ) | |
| LATAUSHA BLAIR, | ) | |
| WILLIE MAE FLOOD, | ) | |
| PATRICIA WRIGHT, and | ) | |
| LORNA GRIGGS, | ) | |
| | ) | |
| PLAINTIFFS | ) | No. 2:12-cv-2404-STA-tmp |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MEMPHIS, | ) | |
| | ) | |
| DEFENDANT | ) | |

**ORDER GRANTING DEFENDANT CITY OF MEMPHIS'
MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant City of Memphis' Motion for Summary Judgment (D.E. # 42), filed on May 21, 2014. Plaintiffs filed a Response in Opposition (D.E. # 43), to which the Defendant filed a Reply (D.E. # 44). For the reasons set forth below, Defendant's Motion is **GRANTED**.

**BACKGROUND**

Plaintiffs allege that Defendant discriminated against them on the basis of their race and their gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and the Tennessee Human Rights Act ("THRA").

**I. Factual Summary**

The following material facts are undisputed for purposes of summary judgment unless otherwise noted. Each of the plaintiffs is a black female who, at the time of the Complaint, had

1

over five years of continuous service as a police radio dispatcher for the City of Memphis (the "City"). (Pls.' Compl. ¶¶ 6–10). On or about May 25, 2011, the City announced a promotional process for the position of Dispatch Supervisor, and qualified applicants were invited to apply. (Def.'s Statement of Undisputed Facts ¶ 1). The posted requirements for the Dispatch Supervisor position stated "High School graduate or equivalent and five (5) years' experience as a Police Radio Dispatcher . . .; or any combination or experience and training which enables one to perform the essential job junctions of the job." (Id. ¶ 14).

The promotion process entailed an interview during which the applicants answered 16 questions from a four-member interview panel.[1] (Id. ¶ 3). The panel members individually scored the applicant's answers to the questions and then compiled the scores to give the applicant an overall score.[2] (Id. ¶ 4). Approximately 30 qualified applicants interviewed for the position, including the Plaintiffs. (Id. ¶ 2). After compilation, the Plaintiffs' overall scores ranked 17th, 19th, 24th, 26th, and 30th among the candidates, and none were selected for promotion to Dispatch Supervisor. (Id. ¶ 8). Instead, four other applicants were chosen. The City states that

---

[1] Local Rule 56.1(b) requires the non-moving party to respond to each fact set forth by the movant by (1) agreeing that the fact is undisputed, (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment, or (3) demonstrating that the fact is disputed. LR 56.1(b). Instead of supporting this disputed fact by citation to the record as the rule requires, Plaintiffs cite numerous paragraphs from their own Additional Statement of Facts. (Pls.' Statement of Add'l Facts ¶ 3). The paragraphs cited, however, do not dispute that the interview consisted of 16 questions or that a four-member interview panel conducted the interview. Rather, the additional statements of fact simply add to the Defendant's statement, rather than dispute it.

[2] Again, the Plaintiffs claim to dispute this fact; however, they appear to dispute only the method by which the score was compiled, not that the four-member panel compiled the scores to give an overall score.

the four successful applicants were those with the highest consensus interview scores.[3] (*Id.* ¶ 6). Plaintiffs claim that the City discriminated on the basis of race and gender in the promotion process when the Plaintiffs were treated less favorably than similarly situated whites and males. (Pls.' Compl. ¶¶ 26–29). One such person is Mr. Sean Lovejoy, a white male whom the four-member panel promoted to Dispatch Supervisor.[4] (Def.'s Statement of Undisputed Facts ¶ 14). More generally, they allege that the City "follows a practice of filling vacant supervisor positions with individuals of the same race and gender irrespective of whether the individuals are eligible for the job."[5] (Pls.' Compl. ¶ 27). In other words, the City fills open positions with applicants of the same race and gender as the outgoing employee.

The Plaintiffs also filed a statement of additional facts,[6] which the Defendant does not dispute for the purposes of this Motion. Plaintiffs' additional undisputed facts begin by stating details that intend to convey the subjectivity of the interviewers and the interview questions. (Pls.' Statement of Add'l Facts ¶¶ 16–30). The Plaintiffs also state that Stephanie Berryman, one of the interviewers, changed several of her grades for the applicants' individual responses during

---

[3] The Plaintiffs again dispute this fact by referring to their own set of facts. However, the paragraph numbers listed do not dispute that the four successful applicants facially received the four highest scores.

[4] The four successful candidates included a white male, a black male, a white female, and a black female.

[5] Plaintiffs also allege that the City "has pursued a pattern and practice of discrimination on the basis of race and gender in its police promotional procedures." Defendant objects to the Court's consideration of such evidence, and the Court addresses this argument below.

[6] Local Rule 56.1(b) allows a non-moving party to provide "a concise statement of any additional facts that the non-movant contends are material and as to which the non-movant contends there exists a genuine issue to be tried." Plaintiffs' additional statement of facts (D.E. # 43-2) spans 15 pages and includes over 85 numbered paragraphs.

the interviews, including some grades of the individuals who were ultimately hired as Dispatch Supervisors. (*Id.* ¶¶ 74–80).

**II. The Parties' Arguments**

Defendant argues that it is entitled to judgment as a matter of law on Plaintiffs' claims for race and gender discrimination in employment. Defendant sets out the two theories for employment discrimination—disparate impact and disparate treatment—and argues that the Plaintiff has failed to provide evidence to support a genuine issue of material fact with regard to Plaintiffs' claims based on either theory, and Plaintiffs now concede that they do not rely on a theory of disparate impact.[7] Next, Defendant argues that Plaintiffs cannot prove their *prima facie* case that Defendant discriminated against them because of their race or gender. Plaintiffs presented no direct evidence of disparate treatment. Instead, Plaintiffs allege that Mr. Sean Lovejoy, a white male who was ultimately promoted to the position of Dispatch Supervisor, was allowed to participate in the interview despite his lack of five years' experience as a dispatcher. Defendant presents undisputed evidence that the posted requirements for the job of Dispatch Supervisor included five years' experience as a dispatcher *or* "any combination of experience and training which enables one to perform the essential functions of the job." Plaintiffs present no evidence that Mr. Lovejoy did not possess such experience or training. Defendant contends that this lack of evidence is insufficient to survive summary judgment.

Defendant then argues that, assuming Plaintiffs have established a *prima facie* case under a theory of disparate treatment, Defendant has provided a legitimate, non-discriminatory reason for not promoting Plaintiffs. Defendant argues that the promotional process and interview

---

[7] *See* Pls.' Mem. in Supp. of Mot. in Opp'n 8. Plaintiffs also originally relied on an alleged violation of the Memphis City Charter as a cause of action. They subsequently conceded that such a violation was not a cause of action, but rather evidence of pretext. *Id.*

4

questions were designed to promote the most qualified applicants, and the applicants with the highest scores were promoted.  Plaintiffs did not have the highest scores from the interview, and thus they were not the most qualified.  Finally, Defendant argues that even if Plaintiffs have stated a *prima facie* case for race or gender discrimination, they cannot show that the City's legitimate reason for not hiring the Plaintiffs was pretext.  Defendant contends that the Plaintiffs' subjective beliefs—absent evidence—that the City made its decision based on race or gender discrimination are not enough to survive summary judgment.[8]

Plaintiffs responded in opposition. They argue that Mr. Lovejoy did not meet the requirements of the job posting, and yet he was still allowed to participate in the interview. Furthermore, Plaintiffs argue that Mr. Lovejoy received access to a database that gave him helpful information, unavailable to the Plaintiffs, relating to the interview.  They also emphasize that the four interviewers were not qualified and that several interviewers changed their handwritten scores of certain applicants' responses to reflect higher scores, including those of the two successful white candidates—Mr. Lovejoy and Ms. Terrie Leborgne.  Presumably, Plaintiffs are arguing that the changed scores reflect racial or gender discrimination.  In a similar fashion, the Plaintiffs argue that the set of interview questions was not job-related to the supervisor position, but was instead subjective.  Plaintiffs primarily point to the changed interview scores and the subjectivity of the interview scoring to prove discrimination.

In its reply brief, Defendant makes two objections to evidence presented in Plaintiffs' Response.  First, Defendant objects to the Court's consideration of a line of discrimination cases cited in Plaintiffs' response as irrelevant.  Second, Defendant objects on two grounds to the

---

[8] Plaintiff Willie Mae Flood, also alleged that she was subject to harassment and retaliation because of the discrimination complaint she filed with the EEOC.  She subsequently conceded this claim.  (Pls.' Mot. in Opp'n 2).

5

Court's consideration of Plaintiffs' Expert Report. Defendant argues that the Plaintiffs have failed to present any evidence of intent to discriminate—a burden borne by the Plaintiff. Even assuming that the questions were not job-related and the interviewers unqualified, Defendant argues that such conduct does not equal discrimination, especially since all 30 applicants answered the same interview questions.

Defendant asserts that the subjectivity of the questions asked during the interview is also insufficient to infer discrimination. Then, Defendant addresses Plaintiffs' assertions that certain applicants' scores were changed, calling such assertions disingenuous. Defendant argues that the Plaintiffs provide no evidence that the individual panel members' scores were "later" changed to match the consensus scores, and it also points out that the interviewer who allegedly adjusted the two successful white applicants' scores upward is a black female—a member of the protected classes to which the Plaintiffs belong. Furthermore, Defendant explains, several of the two successful white applicants' scores were also adjusted downward. In fact, such upward and downward adjustments appeared on the majority of candidates' interview forms, including the Plaintiffs'. This evidence, Defendant argues, fails to suggest discriminatory intent.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a party is entitled to summary judgment if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[9] In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party,[10] and

---

[9] Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Eastham v. Chesapeake Appalachia, L.L.C.*, 754 F.3d 356, 360 (6th Cir. 2014).

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

it "may not make credibility determinations or weigh the evidence."[11]  When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial."[12]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[13]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[14]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[15]  In this Circuit, the nonmoving party must "put up or shut up" as to the critical issues of the claim.[16]  The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[17]

---

[11] *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014).

[12] *Celotex*, 477 U.S. at 324.

[13] *Matsushita*, 475 U.S. at 586.

[14] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[15] *Id.* at 251–52.

[16] *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[17] *Celotex*, 477 U.S. at 322.

# ANALYSIS

## I. Evidentiary Objections

In its reply, Defendant raises objections to the expert report of Dr. Robert Rose and Plaintiffs' evidence of prior discrimination. Defendant contends that the Court should not consider this evidence because it is inadmissible. Local Rule of Court 56.1(e) permits a party to raise evidentiary objections to materials offered in opposition to a motion for summary judgment.[18]

### A. Dr. Rose's Expert Report

Plaintiffs offer the report of Dr. Robert Rose, an industrial psychologist. Dr. Rose's testimony criticizes the validity of the interview questions, and it also focuses on the subjectivity of the questions. Defendant first objects to Dr. Rose's expert report because it is an unsigned and unsworn report, and thus is hearsay. The Sixth Circuit has held that "[u]nsworn export reports are hearsay and may not be considered on summary judgment."[19] Dr. Rose's report was neither sworn to nor certified by affidavit, and thus the court will not consider it in resolving this Motion.[20]

---

[18] LR 56.1(e).

[19] *Shaffer v. CSX Transp., Inc.*, 462 F. App'x 597, 601 n.2 (6th Cir. 2012) (citing Fed. R. Civ. P. 56; *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 480–81, 488 (6th Cir. 2008)); *see Smith v. Prudential Ins. Co. of Am.*, 864 F. Supp. 2d 654, 659 (M.D. Tenn. 2012) (refusing to consider unsigned expert reports at the summary judgment stage).

[20] Defendant also objects to Dr. Rose's report under Federal Rule of Evidence 702 as unreliable; however, the Court need not consider the objection since it has ruled the report inadmissible for the purposes of this Motion.

### B. Evidence of Prior Discrimination

In their Response, the Plaintiffs begin by setting out a line of unrelated cases against the City in an attempt to demonstrate a pattern of discrimination. In this "historical background" section, Plaintiff cites cases analyzed under the theory of disparate impact. As noted, however, Plaintiffs no longer assert a cause of action under this theory. Instead, they proceed under the theory of disparate treatment. In analyzing a disparate-treatment claim, "[t]he fact that a policy or practice may have a disparate impact on a protected class is irrelevant."[21] Plaintiffs' broad "historical background" evidence is not relevant to this case, and therefore the court will not consider it.

## II. Disparate-Treatment Discrimination Claims

The Court holds that the Defendant is entitled to judgment as a matter of law on Plaintiffs' claims for race and gender discrimination. Plaintiffs may choose from two theories to prove a case of employment discrimination: disparate treatment or disparate impact.[22] Here, the Court will analyze Plaintiffs' claims of discrimination under the theory of disparate treatment, as they have conceded their claim under the disparate impact theory.

### A. Statutory Bases for Plaintiffs' Claims

Defendant seeks summary judgment on Plaintiffs' claims for race and gender discrimination under Title VII, 42 U.S.C. § 1981, and the THRA. Title VII provides that it is an "unlawful employment practice for an employer . . . to discriminate against any individual . . .

---

[21] *Gullett v. Town of Normal*, 156 F. App'x 837, 841–42 (7th Cir. 2005) (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44, 53–55 (2003)).

[22] *Huguley v. Gen. Motors Corp.*, 52 F.3d 1364, 1370 (6th Cir. 1995); *Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1257 (6th Cir. 1981).

because of [her] race, color, religion, sex, or national origin."[23]  Similarly, Section 1981 "prohibits intentional race discrimination in the making and enforcing of contracts involving both public and private actors," including "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."[24]  The THRA makes it a "discriminatory practice for an employer to . . . fail or refuse to hire or discharge any person or otherwise discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's race, creed, color, religion, sex, age or national origin."[25]  Courts examine claims based on Section 1981 and the THRA under the same analytical framework and federal case law that apply to claims brought under Title VII.[26]

**B. Three-Step Analysis**

A disparate-treatment claim arises when an employer treats some employees less favorably than others because of a protected characteristic.[27]  It is well established in this Circuit that, absent direct evidence of discrimination, the circumstantial-evidence framework set forth in *McDonnell Douglas Corp. v. Green* controls.[28]  Under that framework, the Plaintiffs must first

---

[23] 42 U.S.C. § 2000e–2(a)(1).

[24] *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (citing 42 U.S.C. § 1981; *Christian v. Wal-Mart Stores, Inc.*, 252 F.3d 862, 867–68 (6th Cir. 2001)).

[25] Tenn. Code Ann. § 4-21-401(a)(1).

[26] *Jackson v. Bd. of Educ. of the Memphis City Schs.*, 494 F. App'x 539, 543 n.1 (6th Cir. 2012) (citing *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001)); *see* Tenn. Code Ann. § 4-21-311(e).

[27] *Huguley*, 52 F.3d at 1370 (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335–36 (1977)).

[28] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

make out a *prima facie* case for employment discrimination. Second, if the Plaintiffs establish a *prima facie* case, the burden shifts to the Defendant, who must articulate a legitimate, nondiscriminatory reason for its employment action. Finally, if the Defendant provides such a reason, the Plaintiffs must prove that the reason given was pretextual.[29]

### 1. *Prima-Facie* Case

To make out a *prima facie* case, the Plaintiffs must prove four elements: (1) that they were members of a protected group; (2) that they were qualified for the promotion; (3) that, despite those qualifications, they were denied the promotion; and (4) that a similarly situated person outside the protected class was treated more favorably than the Plaintiffs.[30] Plaintiffs have established that they are members of two protected groups, that they were qualified, and that they were denied the promotion. Furthermore, a person outside their protected classes—Mr. Sean Lovejoy, a white male—did receive one of the four Dispatch Supervisor positions that the Plaintiffs interviewed for.

### 2. Defendant's Legitimate, Non-Discriminatory Reason

Assuming that the Plaintiffs have established a *prima facie* case, the burden shifts to the Defendant to provide a legitimate, non-discriminatory reason for not selecting the Plaintiffs.[31] A defendant "must clearly set forth . . . the reasons for the plaintiff's rejection," and "[t]he

---

[29] *Harrison v. Metro. Gov't of Nashville*, 80 F.3d 1107, 1115 (6th Cir. 1996) (citing *McDonnell Douglas*, 411 U.S. at 802–04).

[30] *See Serrano v. Cintas Corp.*, 699 F.3d 884, 892–93 (6th Cir. 2012) (citing *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)); *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000).

[31] *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56 (1981).

explanation provided must be legally sufficient to justify a judgment for the defendant."[32] Here, the Defendant has asserted that the Plaintiffs did not receive the promotion to Dispatch Supervisor because they were not the top scorers on the interview. This is sufficient to satisfy the defendant's burden, which is "one of production, not persuasion; it involves no credibility assessment."[33]

### 3. Plaintiffs' Failure to Prove Pretext

Once the City carries its burden, the Plaintiffs must prove by a preponderance of the evidence that the reason given is a "mere pretext for intentional discrimination."[34] To demonstrate intentional discrimination, Plaintiffs may prove that the proffered reason (1) has no basis in fact, (2) is not the actual reason, or (3) is insufficient to explain the City's actions.[35] Moreover, "a reason cannot be proved to be a 'pretext for discrimination' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason."[36] It is at this stage that a disparate-treatment claim differs substantially from a disparate-impact claim: a claim under disparate treatment "obligates the plaintiff to show discriminatory intent or motive for a particular adverse employment decision."[37] Furthermore, "[t]he ultimate question in every

---

[32] *Id.* at 255.

[33] *Felder v. Nortel Networks Corp.*, 187 F. App'x 586, 592 (6th Cir. 2006) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

[34] *Id.*

[35] *Logan v. Denny's*, 259 F.3d 558, 567 (6th Cir. 2001).

[36] *St. Mary's Honor Ctr.*, 509 U.S. at 515. Plaintiffs use a "motivating factor" standard in their argument for pretext. But as the Supreme Court has explained, the Plaintiffs must prove that the proffered reason was false and that discrimination was the real reason. *Id.*

[37] *Huguley v. Gen. Motors Corp.*, 52 F.3d 1364, 1371 (6th Cir. 1995) (citing *Int'l Bhd. of Teamsters*, 431 U.S. 324, 335–36 (1977)).

12

employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination."[38]  The Plaintiffs fail to show intentional discrimination.

Although the framing is unclear, it appears that the Plaintiffs offer several conclusory allegations to prove racial animus as the real reason for the City's decision not to promote the Plaintiffs.  First, Plaintiffs argue that the City's failure to abide by the Memphis City Charter can be used to establish pretext.  The relevant Memphis City Charter provision states that

> [a]ll applicants for employment in positions protected by this article, shall be subjected to competitive job-related examinations under such rules and regulations as may be adopted by the Director of Personnel.  The examinations to be provided for shall be of a practical nature and relate to such matters as will fairly test the relative competency of the applicant to discharge the duties of the particular position.  These examinations should be developed in conjunction with other tools of personnel assessment and complemented by sound programs of job design to aid significantly in the development and maintenance of an efficient work force and in the utilization and conservation of human resources.[39]

Plaintiffs assert that the interview questions were subjective and not job-related, and thus the City's failure to create and ask legitimate, objective interview questions in this case is proof of intent to discriminate on the basis of race or gender.  But such conduct, by itself, does not equal discrimination, and the Plaintiffs have not connected the interview's alleged flaws with any evidence of discriminatory intent.[40]  All of the applicants went through the same interview and

---

[38] *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 153 (2000).

[39] Memphis, Tenn., Charter art. 34, § 250.1.

[40] *See Schoonmaker v. Spartan Graphics Leasing*, 595 F.3d 261, 269–70 (6th Cir. 2010) ("Even if [the employer's] reasons were subjective, the evidence does not raise an inference of . . . discrimination.").

13

answered the same 16 questions. The subjectivity or appropriateness of the questions does not give rise to an inference of discrimination if all applicants were scored on the same questions.[41]

Second, Plaintiffs claim that the two successful white candidates—Mr. Lovejoy and Ms. Leborgne—were given favorable treatment. Plaintiffs claim that these two applicants' scores "were changed and increased after they completed the interview process and their original scores were written down."[42] Apparently, Plaintiffs wish the Court to infer that the interviewers were not simply changing their scores as the applicants answered questions during the interview, but rather changed the scores *after* the interviews because Mr. Lovejoy and Ms. Leborgne are white. As the City points out, this selective inclusion of facts is disingenuous. In fact, the four-member panel's individual score sheets contain upward and downward score-adjustments for the majority of candidates. Moreover, three of the five Plaintiffs received upward adjustments. The Court sees no pattern to infer discrimination in the adjustment of the scores. Furthermore, even collaboration and changing scores after the interview "[would] not, without specific evidence, create a dispute of material fact."[43]

Third, Plaintiffs attempt to show pretext by arguing that Mr. Lovejoy was given favorable treatment in the interview process, thus demonstrating the City's discriminatory intent against

---

[41] Plaintiffs also make an argument about the validation of tests, presumably under 29 C.F.R. § 1607.16(c). But as Defendants have noted, validation is only required when adverse impact is present. *Id.* § 1607.1(B) ("These Guidelines do not require a user to conduct validity studies of selection procedures where no adverse impact results."). Plaintiffs do no allege adverse impact, and validation of the interview questions has no bearing on their disparate-treatment claim.

[42] *See* Pls.' Mem. in Supp. of Mot. in Opp'n 11.

[43] *Hawkins v. Memphis Light, Gas, & Water*, 2011 U.S. Dist. LEXIS 138776, at *29–30 (W.D. Tenn. Dec. 1, 2011), *aff'd*, 520 F. App'x 316 (6th Cir. 2013) (affirming in part because "nothing in the record shows that [the interviewers] changed their interview scores based on discussions after the interviews").

both non-whites and non-males. Plaintiffs argue first that Mr. Lovejoy was not qualified to compete for the open position because he did not have five years' experience as a radio dispatcher. Nevertheless, Plaintiffs admit as undisputed that the job posting required a high school diploma and five years' experience, "*or* any combination of experience and training which enables one to perform the essential job functions of the job."[44] Thus, based on the job posting, Mr. Lovejoy was qualified to interview. Plaintiffs next assert that Mr. Lovejoy had access to a supervisor-only database for some time before the promotion process, by which he may have gleaned advantageous information. But the Plaintiffs have offered no evidence as to *what* Mr. Lovejoy would have learned on the database that would have benefitted him. Such bald assertions amount to subjective conclusions that do not give rise to a genuine dispute.

Finally, Plaintiffs attempt to show pretext by arguing that the City essentially follows a quota system in replacing outgoing supervisors—replacing like races with like races and like genders with like genders. Even if the Court assumes that using a quota system would ascribe intentional discrimination as pretext, the Plaintiffs put forth only conclusory statements, rather than facts, to persuade the Court of such a system. In the Plaintiffs' own statement of the facts, they only explain three different promotional processes in three different years. Of those three years, in only one year were supervisory positions replaced with like race and like gender.[45] For example, in 2007 two white males vacated supervisory positions, and they were replaced by a white female and a black female. Although the Plaintiffs have attempted to show a quota

---

[44] *See* Def.'s Statement of Undisputed Facts ¶ 14 (emphasis added).

[45] In 2011, a black female, white female, black male, and white male vacated supervisor positions. The positions were filled with like races and genders. In 2007 and 2008—the other two years in the record—the pattern does not exist.

15

system, the facts do not support such a conclusion. Instead, they refute the conclusion, leaving no genuine dispute.

## **CONCLUSION**

Assuming that Plaintiffs have established a *prima facie* case for disparate treatment on the bases of race and gender, the Court holds that Plaintiffs have failed to show that Defendant's legitimate, non-discriminatory reason for denying the Plaintiffs promotions was pretext for discrimination under the theory of disparate treatment. Plaintiffs also conceded their retaliation claim. Therefore, Defendant's Motion for Summary Judgment is **GRANTED** as to all Plaintiffs' claims.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 9, 2014.